In re Guardianship of Irvine.

(No. 450—Decided April 5, 1943.)

Mr. *Barton W. Blair*, Mr. *Robert J. Grossman* and Mr. *Jay S. McDevitt*, for the ward, appellant.

Mr. *B. E. Sapp* and Mr. *R. L. Carr*, for the guardian, appellee.

SHERICK, J. The Probate Court of Knox county, having heretofore appointed the appellee as guardian of the person and estate of the appellant ward, was, by

this subsequent proceeding, called upon to discharge and terminate the guardianship. A hearing was had upon the ward's application for discharge. The court refused the application. From this finding and order, the ward now appeals to this court on questions of law.

The application for discharge is based upon two grounds. First, she avers that she was never served with notice of the hearing had which resulted in the guardian's appointment; and that if she received any form of notice thereof, it was improperly and surreptitiously made and not in accordance with the statutes of the state of Ohio, or the rules of the Probate Court. The ward's second complaint is in that she has been declared an incompetent by reason of advanced age, without her consent having been first obtained. It is therefore apparent that the ward is not attempting by her application for discharge to relitigate the issue made and decided upon the application for guardianship. She now in fact questions the court's jurisdiction and power to have found, as it did find, a guardian to be necessary over her person and estate.

The appellee guardian asserts that the bill of exceptions is incomplete because it does not display the evidence offered by the applicant upon the application for guardianship hearing which the ward says she did not attend by reason of lack of notice. The appellee further states, inasmuch as the ward did not move for a rehearing on the order made dismissing her application for the guardian's discharge, that this court may not now examine or consider the record before us. This is of course to say that we may not do so because the weight of the evidence is involved. If this is true then appellee has the right of it. Upon the other hand appellant says that she has maintained the two issues which she advanced by her application to terminate the guardianship; that there exists no other issues; and

that she has established her right to relief by uncontroverted and stipulated proof, hence all that the Probate Court had to do was to apply the law to the undisputed facts, and no weighing of any evidence was necessary or proper.

An examination of the record before us discloses that the ward is an aged person; that she is blind, confined within her home, and attended only by a housekeeper and the guardian who directs all operations therein and who is the ward's only next of kin. The last fact is stipulated. The others are conceded. The guardian and the housekeeper assert that the guardian delivered and read the notice to the ward of the time and place of hearing of the application for guardianship. We simply note this fact because it appears within the record. Even if it be true we are of opinion that it cannot be dispositive of the service issue as will hereinafter be demonstrated. The only other bits of evidence that are pertinent to the issues presented are found within the application for guardianship, the notice and the return thereof, and the journal of the court's finding. These documents were offered and received in evidence without objection. These related undisputed matters and documents to our notion completely establish the ward's right to the relief which she sought. There was no disputed issue of fact before the court. Such as the appellee sought to make were immaterial and decidedly beside the two matters in issue. The court had only to apply the law to the uncontroverted facts. It was not required to weigh evidence. Hence it was not necessary that a motion for a rehearing be made.

The application for appointment of the guardian recites that "Flora B. Irvine is incompetent by reason of advanced age and physical disability." It does not charge that she is mentally incompetent. We next note

that this instrument states that Mary E. Giles is the only next of kin of the incompetent. The usual consent by a prospective ward which appears on the back of this legal blank is not signed by the appellant. It is not filled out, and is in blank. We find no such written consent within the files before us.

Turning next to the notice of hearing on the application for guardianship issued out of the Probate Court, we find it stated that Flora B. Irvine is said to be incompetent "by reason of being an incompetent by reason of advanced age:" The return and affidavit of service on the back thereof establishes that service was made upon the prospective ward by Mary Giles, who says she is the only next of kin. Whether this service was made upon the order of the court is not disclosed. No journal entry to that effect appears within the record or files before this court.

The journal of appointment and finding of incompetency simply recites that "Flora B. Irvine is incompetent and therefore she is incapable of taking care of and preserving her property," and Mary E. Giles is appointed guardian.

In *Schafer v. Haller, Gdn.,* 108 Ohio St., 322, 140 N. E., 517, the court had occasion to consider an appeal from an order refusing to remove a guardian who had been appointed for an aged person incapacitated by reason of physical disability. It was held that this might not be done against the will of one who was mentally capable. The court therein declared Section 10989, General Code, in such a case, to be unconstitutional. Thereafter the Legislature sought to right itself, by enacting Section 10507-2, General Code, which now supplants Section 10989, General Code. The new section practically restates the repealed section, but includes the following provision:

"Except that if the incompetency be due to physical

disability or infirmity the consent of the incompetent must first be obtained.''

This was not complied with in the case of Flora B. Irvine. We have previously recited that the application for appointment states only that ''Flora B Irvine is incompetent by reason of advanced age and physical disability.'' Clearly this is not a claim or charge of mental irresponsibility, but only that she is old and infirm. This being the charge against her she was entitled to sit supine, even if she had constructive notice, because under the law and her constitutional rights she could not be deprived of her liberty and command of her property without her consent. She neither gave her consent in writing nor so advised the court by word of mouth. She could not do the latter because she did not appear in court. We are told by appellee's counsel that the court in the original hearing received evidence of mental incapacity. If this was done it was not responsive to the issue made by the application for appointment. The prospective ward was not notified of any such issue. The record before us discloses that the guardian and housekeeper were permitted to testify, under objection, as to the ward's mental condition. Such matters were not in issue in this proceeding for removal. It all sums up to two indisputable conclusions. It was a course pursued to justify that which was wrongfully done in the first instance. It was a patent attempt to impeach the verity of the application, service and finding of the order of incompetency for physical disability which only could have been made.

The record further discloses a rather startling innovation. The court's only knowledge of the proposed ward's consent was offered by the appellee's counsel in the course of a professional statement, which was to the effect that the proposed ward had consented to the guardian's appointment. It is not in evidence that this

fact was communicated to the court during the course of the hearing on the application for guardianship. The incongruity of this novel proof will be developed in what we shall have to say on the appellant's, let us say, second cause of action.

Section 10506-53, General Code, provides, among its other provisions, that a Probate Court may remove a guardian "for any other cause authorized by law." Surely if a guardian has been appointed over one mentally responsible without notice thereof or without that one's consent, there exists a cause for removal that the law authorizes. If the court acted without right and jurisdiction over the person of a proposed incompetent it committed a grievous wrong which it should correct immediately. This could be done only by the guardian's prompt removal.

Section 10501-21, General Code, is the general statute which authorizes and directs the manner of service of notice upon contestants in probate court controversies where such is not otherwise regulated by statute. Subsequent Section 10507-4, General Code, deals specifically with notice in guardianship matters and directs upon whom and how service may be made. It fails, however, to direct by whom such service of notice shall be made in guardianship appointments. At the same time the Legislature enacted Section 10501-13, General Code, which gave to Probate Courts that which they already inherently possessed, to wit, the power to make reasonable and necessary rules of practice therein. Thereupon the Probate Judges' Association proceeded to adopt certain uniform rules of which the Supreme Court approved in accordance with the statute's terms. The Supreme Court has since considered the propriety of its general approval and has limited the same. (See *Brown* v. *Mossop*, 139 Ohio St., 24, 37 N. E. [2d], 598.) The immediate matter, therefore, with which we are

now concerned should be and is confined to the reasonableness of that court's Rule No. 27, and whether or not it conflicts with the provisions of general service Section 10501-21, General Code. The Rule provides:

*"In applications for the appointment of guardians for* lunatics, idiots, *incompetents,* etc., *the notice to the proposed ward must be served by the sheriff or some other disinterested person."*

It is self-evident that when the Probate Judges' Association proposed and adopted this rule of practice, it proceeded to correct a glaring omission in Section 10507-4, General Code. It was recognized that interested persons should not be permitted to serve such notices, because if they were allowed to do so frauds might be perpetrated upon those who were not able to protect themselves against next of kin who had designs upon their estates. If the ward's declarations in her application for discharge be the truth of the matter, that is, that she was not served with notice, then it must be clear to any one that had the rule been followed the very thing which the rule sought to avoid could not have arisen. We unequivocably hold that the rule is not only reasonable but salutary. We cannot see that it contravenes Section 10501-21, General Code. It but supplements Section 10507-4, General Code.

We think it is significant that Section 10507-4, General Code, although it provides that notice may be waived, makes one specific exception. It says that all competent persons may waive notice, "except the person for whom such appointment is sought." The exception is directly at odds with the waiver portion of Section 10501-21, General Code. It will further be noted that Section 10501-21, General Code, directs that the Probate Court shall "order notice to be given * * * in such manner * * * as he deems reasonable." We have hereinbefore pointed out that no such order ap-

pears within the docket and journal entries. It is perceived that this section does not state who shall serve notices generally. It only provides that the court shall order such to be done "as he deems reasonable." Rule 27 simple directs that which is reasonable in such cases.

The undisputed record and the stipulated fact conclusively prove that the proposed ward's only next of kin is the appellee guardian. She is not disinterested, and in fact is the only one interested. We therefore conclude that even if the appellant was served with notice by the appellee, such service was highly improper, not in accordance with an order or the rule of the court upon which appellant had a right to rely, and which should have been quashed upon the court's own motion.

We revert, for the moment, to the professional statement made during the course of the removal hearing, to the effect that the ward had consented to the appointment. If statements of this kind are to be received in lieu of evidence from any source, it may be expected that guardians will be appointed for those mentally sound without their consent. It would permit by indirection the very thing that the amendment of Section 10989, General Code, as it now appears in Section 10507-2, General Code, sought to correct. The same may be said of Rule 27. It would re-establish the condition as it existed prior to the decision of *Schafer* v. *Haller, Gdn., supra.* Although Section 10507-2, General Code, does not prescribe that such consents should be in writing or made in open court by proposed wards who are mentally competent, the spirit and purpose of that section require that such be the rule, which we unhesitatingly declare.

It follows that the order and judgment of the Probate Court are reversed and the cause is remanded

with instruction to the Probate Court to remove the guardian and to restore the appellant to full custody and control of her undiminished estate. It is further adjudged that appellee shall pay all costs of suit and all costs and charges of administering the purported guardianship including her own attorney fees.

*Judgment reversed.*

MONTGOMERY, P. J., and PUTNAM, J., concur.