IN RE BARTLETT.

(No. 1076—Decided April 16, 1958.)

Mr. *John W. Yager*, for appellant Kelsey Bartlett.
Mr. *Robert O. Stout*, prosecuting attorney, for appellee.

MIDDLETON, P. J.   This is an appeal from a judgment of the Probate Court denying the motion of appellant to vacate its former judgment finding the appellant to be mentally ill and its order of commitment to a mental hospital made pursuant to that judgment.

On April 14, 1954, Mary E. Bartlett, then the wife of appellant, filed an affidavit in the Probate Court alleging appellant to be mentally ill. The Probate Court set the hearing on the affidavit for the following day, April 15, 1954, and on April 15 a hearing was had and the Probate Court entered a judgment adjudging the appellant to be mentally ill, and ordered him committed to the Columbus Receiving Hospital, from which hospital he was later transferred to the Toledo State Hospital.

On June 9, 1955, the appellant filed an application in the Probate Court, under Section 5123.52, Revised Code, to be released and discharged from the Toledo State Hospital. As a result of the hearing on this application the court found the appellant was "not now mentally ill" and ordered him discharged from the Toledo State Hospital; pursuant to this order the Superintendent of the Toledo State Hospital issued a certificate of discharge to the appellant; and, thereafter, on April 3, 1957, the appellant filed, in the Probate Court, a motion to vacate the judgment finding him to be mentally ill and ordering his commitment. This motion the court denied, and it is from the overruling of this motion that appeal is prosecuted to this court.

The basis for the motion is that the judgment of the court was irregularly obtained and that the Probate Court was without jurisdiction to enter the judgment.

For his assignments of error, the appellant sets forth:

1. The Probate Court lacked jurisdiction to adjudge appellant to be mentally ill and order him to be committed to a mental institution pursuant to such judgment.

2. The Probate Court erred in denying and overruling appellant's motion to vacate, and its order denying and overruling appellant's motion to vacate is contrary to law.

At the time of the filing of the affidavit alleging appellant to be mentally ill, Section 5123.21, Revised Code, provided as follows:

"No hearing shall be had upon the affidavit provided for in Section 5123.18 of the Revised Code, until the probate judge has caused written notice by mail or otherwise as the court directs, to be given to the following persons;

"(A) Any one person designated by the person believed to be mentally ill if such person is considered by the court competent to make a selection; but if the person is considered by the court incompetent to make a selection, then the notice shall be sent to the person's attorney or to the next of kin or a friend of the person other than the person who filed the affidavit; if the person selected to represent the patient fails to appear, the court shall appoint a guardian ad litem to act in the patient's behalf;

"(B) Any person whom the probate judge determines should have notice of such hearing;

"All persons entitled to notice under this section may waive such notice, and their failure to appear shall not invalidate any action taken by the court under Section 5123.23 of the Revised Code."

From the undisputed facts appearing in the record it is disclosed that the probate judge failed to comply with any of the provisions for the giving of notice of a hearing on the affidavit alleging appellant to be mentally ill as required in subsection (A) of Section 5123.21 of the Revised Code.

In the case of *State, ex rel. Parsons,* v. *Bushong, Supt.,* 92 Ohio App., 101, 109 N. E. (2d), 692, this court held that the record must show complete observance of all the requisites of the statute to give the Probate Court jurisdiction, and, where the record fails to show such strict compliance with the statute, the Probate Court is without jurisdiction to render a judgment.

The record of the Probate Court in the instant case shows upon its face that the court was without jurisdiction, and, therefore, the judgment that the appellant was mentally ill and his commitment pursuant to that order were illegal and void.

*State, ex rel. Parsons,* v. *Bushong, Supt., supra* (92 Ohio App., 101); *In re Koenigshoff,* 99 Ohio App., 39, 119 N. E. (2d), 652; *In re Guardianship of Irvine,* 72 Ohio App., 405, 52 N. E. (2d), 536; *In re Wertz,* 70 Ohio Law Abs., 408, 118 N. E. (2d), 188.

It is, however, urged that the appellant is estopped from attacking the lack of jurisdiction in the original proceedings by reason of his having filed, on June 9, 1955, an "application for

release"; and that by virtue of the filing of such application the appellant waived any defect in the original proceedings and entered a general appearance therein.

In his application for release the appellant states it is filed under the provisions of Section 5123.52, Revised Code, which are as follows:

"Any person, not under indictment or conviction for crime, committed to an institution under Sections 5123.01 to 5123.62, inclusive, and 5125.01 to 5125.38, inclusive, of the Revised Code, may, after the expiration of one year from the date of his commitment, make written application, to the court by which he was committed, for his release.

"Such application may be made personally, by counsel, by guardian, or by next friend but must be supported by a certificate of a reputable physician.

"The court shall grant a hearing upon such application, at which hearing it shall give consideration to reports and recommendations of the Department of Mental Hygiene and Correction and to such evidence as the applicant may present.

"No subsequent application to said court shall be filed on behalf of any person whose application is denied, except by leave of court, within one year after the date of the last preceding hearing.

"If upon any hearing provided by this section, the court finds that such person is not then mentally ill, insane, mentally deficient, psychopathic, or epileptic, the court shall order the department to discharge such person."

In the prayer of his application for release, the appellant prays that the court "grant a hearing on this application, to find your applicant mentally competent at this time and issue an order restoring this applicant to mental competency and releasing and discharging him from the Toledo State Hospital and any other mental institution, according to law."

Section 5123.52, Revised Code, provides only for a hearing on an application for release from an institution to which the applicant has been committed; it does not provide for a hearing on the applicant's competency at that time. Procedure to procure an adjudication of competency is provided for by Section 5123.51, Revised Code, and may not be filed until the applicant

has received a certificate of discharge from the institution to which he was committed. It is, therefore, determined that the application the appellant filed was an application for release only and limited to the provisions of Section 5123.52, Revised Code. Any order made by the Probate Court determining applicant's competency at the time was voluntary and not authorized in such proceedings.

The hearing had upon the applicant's application for release did not require or involve a rehearing of the issues in the original proceedings. By filing his application for release the applicant was not attempting to relitigate the issues involved in the original proceedings finding him to be mentally ill. It cannot be successfully argued that by filing an application for release the applicant entered a general appearance and thereby waived or is estopped from asserting the lack of jurisdiction in the Probate Court to enter the original judgment.

In the opinion of Hurd, P. J., in the case of *In re Koenigshoff, supra* (99 Ohio App.), at page 45, with which we agree, it is stated:

"We come now to consider the second question posed above, namely, the argument that the appellant entered his general appearance in Probate Court on November 4, 1953, by filing therein his motion to strike from the files and expunge from the record all proceedings; and whether such appearance related back to the time of original hearing. We think this argument assumes a false premise and is, therefore, untenable. It assumes that the court having, without knowledge of failure of due process, adjudged a person as incompetent, that such person, although incompetent in the judgment of the court, waived a right peculiarly personal to him under the law in seeking, by the only means available, to vacate such adjudication.

"In the case of *In re Guardianship of Irvine, supra,* it was held, *inter alia,* that, upon such an application to vacate an entry of incompetency for want of jurisdiction due to failure of due process in compliance with statute, the applicant was not thereby attempting to relitigate the issue made and decided in the original application to appoint a guardian. This accords with sound reason and good logic.

"Whichever horn of the dilemma is considered, the court is

without jurisdiction to relate the issues to the original hearing. Either the person is competent, or he is incompetent. If he is, in fact, competent the court may not proceed to declare him incompetent. If he is incompetent, it is fundamental that he is not so *sui juris*, and the court may not then adjudicate his rights personal to him on the theory that he is competent to waive such rights. Certainly, nothing could be done which would clothe the court with jurisdiction to re-adjudicate the original issue and declare such person incompetent without due process.''

In the opinion of the court the appellant, in filing his application for release, waived no right and is not estopped from asserting lack of jurisdiction in the Probate Court to enter the original judgment declaring him to be mentally ill. That judgment is void *ab initio* and nothing which occurred thereafter can supply the necessary requisites necessary to give the court jurisdiction.

Nor do we believe, as urged by the appellee, that the questions involved are now moot by reason of appellant's release. Appellant's release relates only to his mental condition at the time of the order of release. His release from confinement and the purported adjudication of his competency did not affect or remove the question of his competency or the legality of his confinement from the date of the judgment declaring him to be mentally ill, to the date of his release from confinement. So long as the original judgment finding him to be mentally ill and incompetent remains a valid and legal judgment, just so long does the validity of acts of appellant from the time of the original judgment and the time of the court's judgment purporting to restore him to competency remain in question.

Appellant's right to contract, his competency to make a will, his liability to the state for his support during the time of his confinement are a few of the questions which may be cited and which are not determined by his release.

It therefore cannot be said that the appellant's application to vacate the original judgment presents questions which are hypothetical, academic or dead. In the opinion of the court the issues involved are genuine and live controversies and affect legal existing relations.

''A question becomes moot only when it is purely academic

or abstract and any judgment which might be rendered thereon would in no way avail or be beneficial to any of the parties.'' *The Artists and Writers Assn.* v. *The State of Ohio, Department of Liquor Control*, 96 Ohio App., 121, 121 N. E. (2d), 263.

The judgment of the Probate Court finding appellant mentally ill and his commitment under the order were illegal and void, and the judgment is, therefore, reversed as being contrary to law, and final judgment is entered for appellant.

*Judgment reversed.*

YOUNGER and GUERNSEY, JJ., concur.