**KOENIGSHOFF, Incompetent, In re.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23128.   Decided May 19, 1954.

Saul S. Danaceau, Asst. County Pros., Cleveland, for plaintiff-appellee.

Owen C. Neff, Cleveland, for defendant-appellant.

## OPINION

By HURD, PJ.

This is an appeal on questions of law from a judgment of the Probate Court, overruling a motion to strike and expunge from the files all proceedings relating to the appointment of a guardian of Dr. John A. Koenigshoff, a physician and surgeon, who had been adjudicated an incompetent and from a judgment denying the application of the guardian to terminate the guardianship.

On August 21, 1953, Kathleen Koenigshoff, the wife of said Dr. Koenigshoff, filed the original application in Probate Court alleging that her husband was an incompetent and that by reason thereof she requested appointment as guardian of his person and estate. At the same time, an application was filed to have Dr. Koenigshoff adjudged a person mentally ill. Both matters were set for hearing and were heard on August 28, 1953, on which date, on the basis of the application and a letter from a certain Dr. Ferrari, and on a hearing before a court deputy, Dr. Koenigshoff was adjudged an incompetent person and his wife, Kathleen Koenigshoff, was appointed guardian, by the court. The files at that time showed that Dr. Koenigshoff had been personally served by a deputy sheriff of Cuyahoga County on August 24, 1953, within three days prior to the hearing of the application, at which time Dr. Koenigshoff was at Marymount Hospital, having been admitted to that hospital on August 10, 1953, under the care of said Dr. Ferrari, where he voluntarily submitted to psychiatric treatment. His condition was then diagnosed as a nervous breakdown due to overwork. Previous to and at the time of admission to the hospital he had been taking certain drugs and sedatives. After about a week Dr. Koenigshoff

began to talk about leaving the hospital. It appears that Dr. Ferrari believed that further treatment would be required, and believing that it would be impossible to keep Dr. Koenigshoff in the hospital without his consent, he advised his wife to go to Probate Court where she made the application above described. Dr. Koenigshoff was discharged from Marymount Hospital in about two weeks and thereafter was transferred to a private rest home where he remained another two weeks, after which he learned of the guardianship proceedings. Thereafter, in his own name, he filed a motion to strike from the record and expunge from the files all of the proceedings above described, on the ground that he had not been personally served with summons and that the proceedings were void ab initio. His wife, Kathleen, also filed an application to terminate the guardianship on the ground that "the said John A. Koenigshoff is now and always has been a person competent to care for his person, manage and control his estate and provide for his family." Attached to her application is an affidavit which, in part, reads as follows:

"Kathleen Koenigshoff, being first duly sworn according to law, deposes and says that on or about the 28th day of August, 1953, she applied for and received letters of guardianship over the person and estate of her husband, John A. Koenigshoff; that at the presentation of said application she did not have the advice and assistance of counsel; that said application was presented under the mistaken belief that a guardianship was necessary, when in fact it was not; that no sufficient reason existed for said guardianship; that although she signed the application she was not aware of its significance nor did she fully realize the import of said guardianship.

"Affiant further says that John A. Koenigshoff is now and always has been a person fully competent to manage and control his person and his property and to provide for his family."

Both the motion of Dr. Koenigshoff and the application of his wife were set for hearing in Probate Court at which time a complete record was taken, as shown by a bill of exceptions filed in this appeal.

The Probate Court denied the motion on the ground that the movant had received actual notice and on the further ground that he had entered a general appearance by filing the motion, which, in the opinion of the Court, related back to the time of the original order and judgment and thereby he waived personal service of notice on the original hearing of August 28, 1953.

The application of Kathleen Koenigshoff was denied on the ground that Dr. Koenigshoff, at the time of the hearing, was an incompetent person. Motions for new trial were filed and overruled.

The sheriff's return on the Application for Letters of Guardianship was signed by deputy sheriff, Lewis V Shram, who. when called as a witness by the movant, testified that he had never personally served notice of summons on Dr. Koenigshoff. Thereafter, Frank LoSchiavo, a deputy sheriff in charge of the district in which Marymount Hospital is located, was called as a witness, who also testified that he had never served notice of summons on Dr. Koenigshoff. Dr. Koenigshoff testified further in great detail as likewise did his wife, Kathleen Koenigshoff, who gave testimony directly substantiating the affidavit attached to her application to terminate the guardianship heretofore set forth. She further testified that when the application was presented, she at no time appeared before the Probate Judge; that the only appearance made was before a deputy clerk, lasting only a few minutes, and that she had been advised by a certain Dr. Hunter to bring her husband home, the latter having fully recovered.

Error is assigned as follows:—

"1. The court erred in holding that the movant had actual notice of the hearing within three days of August 28, 1953.

"2. The court erred in holding that actual notice is equivalent to personal service as required by the statute.

"3. The court erred in failing to strike the letter of Dr. Ferrari as incompetent and privileged.

"4. The court erred in failing to sustain the motion to quash service and in failing to grant the motion to strike from the files and expunge from the record.

"5. The court erred in holding that the movant had made a general appearance by filing the motion and application and that this general appearance related back to August 28, 1953 and gave the court jurisdiction over the person of John A. Koenigshoff, thereby waiving the requirement of personal service.

"6. The court erred in failing to grant the application to terminate the guardianship.

"7. The order of the court is clearly against the manifest weight of the evidence.

"8. Other errors apparent on the face of the record."

In our opinion, the principal questions may be stated as follows:

(1) Where, upon an application filed with the Probate Court alleging a person to be mentally ill, and incompetent, a hear-

ing is had inquiring into the status of such person's incompetency, before a deputy clerk, and the Probate Court thereafter adjudges such person incompetent and thereafter it is conclusively shown that no notice was personally served upon such person, informing him of the application and the hearing, and no opportunity was given him to be heard, is the judgment of the Probate Court, declaring such person incompetent, void for lack of due process? And,

(2) Where a person having been adjudged incompetent under the facts and circumstances herein delineated, files a motion to vacate such entry of incompetence, does such action constitute an entry of appearance relating back to the time of notice of the original adjudication and in effect give the court jurisdiction over the person of the alleged incompetent, thereby waiving the requirement of personal service of notice required by statute?

We shall consider these questions in the order named.

The record of the hearing in this case to terminate the guardianship and to vacate the judgment of incompetency clearly shows by uncontradicted evidence that personal service of notice was never had or made upon the person of the alleged incompetent, nor is there any record that consent was given in writing by the alleged incompetent.

**Sec. 10507-4 GC,** then in force (comparable §2111.04 R. C.) so far as pertinent, reads as follows:

"Notice: No guardian of the person or of the estate, or both shall be appointed until at least three days after the probate court has caused written notice, setting forth the time and place of the hearing, to be served upon the following persons:

"'* * *

"(b) In the appointment of the guardian of an incompetent * * *

"1. **Personal service of such written notice upon the person for whom such appointment is sought.**" (Emphasis supplied.)

**Sec. 2111.04 R. C.** is to the same effect, providing:

"1. Upon the person for whom such appointment is sought by personal service."

A somewhat analogous question to that presented here, was under consideration in the case of **In re Guardianship of Irvine, 72 Oh Ap 405,** wherein the court held, as indicated by the syllabus, as follows:

"1. Rule 27 of the Uniform Rules of Practice in the Probate Courts of Ohio, adopted pursuant to §10501-13 GC, and providing that 'in applications for the appointment of guardians for * * * incompetents * * * the notice to the proposed ward must be served by the sheriff or some other disinterested

person,' is reasonable and salutary, supplements §10507-4 GC, and does not contravene §10501-21 GC."

"2. The spirit and purpose of the provisions of §10507-2 GC 'that if the incompetency' of an incompetent, 'be due to physical disability or infirmity, the consent of the incompetent' to the appointment of a guardian 'must first be obtained,' require that 'the consent' should be in writing or made in open court by the proposed ward who is mentally competent."

"3. Where a guardian, the next of kin of the ward, was appointed by the Probate Court after hearing of an application of the guardian reciting that the named ward 'is competent by reason of advanced age and physical disability' notice of which hearing has been given the ward by such guardian only, the guardian, upon application of the ward must be removed and the ward restored to full control of her undiminished estate."

The opinion concludes:

"It follows that the order and judgment of the probate court are reversed and the cause is remanded with instructions to the probate court to remove the guardian and to restore the appellant to full custody and control of her undiminished estate. It is further adjudged that appellee shall pay all costs of suit, and all costs and charges of administering the purported guardianship, including her own attorney fees."

In the recent case of In re Wertz, decided by the Court of Appeals of this District (No. 22978, March 10, 1954), it was held that the Probate Court erred in overruling appellant's petition to vacate its order adjudging applicant mentally ill, where statutory requirements in respect to service of notice had not been complied with. While the original proceedings to secure a judgment of mental illness were instituted under §§11890-23 to 11890-27 GC (now §§5123.18 to 5123.23 R. C.) the same principles of law therein set forth are applicable here. This Court held that service of such notice was an essential element of such proceedings and that the commitment made without such notice was illegal and void. In the course of the opinion, Hunsicker, J., of the Ninth District, sitting by designation, speaking for a unanimous court, cited the case of State ex rel Parsons v. Bushong, Supt. etc., 92 Oh Ap 101, and stated that the Court was in agreement with the reasoning and conclusions of that case. In the latter case it was held, as appears by paragraphs 4 and 5 of the syllabus, as follows:

"4. In a proceeding instituted in the probate court pursuant to §11890-23 GC, for the detention of a person thought to be mentally ill, such court exercises purely statutory jurisdiction

and its record must show affirmatively the observance of all requisites to the exercise of such jurisdiction.

"5. In such proceeding, where the record fails to show compliance with the provisions of subdivision 1 of §11890-25 GC, requiring the giving of notice, the Probate Court is without jurisdiction."

It is our conclusion, therefore, in the instant case, that the alleged incompetent not having been personally served with notice, as provided by law, and that upon such fact appearing upon the application to terminate the guardianship and upon the motion to vacate the entry of incompetency, the Probate Court erred prejudicially to the rights of the appellant in refusing to grant the motion and application.

We come now to consider the second question posed above, namely, the argument that the appellant entered his general appearance in Probate Court on November 4, 1953, by filing therein his motion to strike from the files and expunge from the record all proceedings and whether such appearance related back to the time of original hearing. We think this argument assumes a false premise and is therefore untenable. It assumes that the court having, without knowledge of failure of due process adjudged a person as incompetent, that such person, although incompetent in the judgment of the court, waived a right peculiarly personal to him under the law, in seeking by the only means available to vacate such adjudication.

In the case of In re Guardianship of Irvine, supra, it was held inter alia that upon such an application to vacate an entry of incompetency, for want of jurisdiction due to failure of due process in compliance with statute, the applicant was not thereby attempting to relitigate the issue made and decided in the original application to appoint a guardian. This accords with sound reason and good logic.

Whichever horn of the dilemma is considered, the court is without jurisdiction to relate the issues to the original hearing. Either the person is competent, or incompetent. If he is, in fact, competent the court may not proceed to declare him incompetent. If he is incompetent, it is fundamental that he is not sui juris and the court may not then adjudicate his rights personal to him on the theory that he is competent, to waive such rights. Certainly, nothing could be done which would clothe the court with jurisdiction to re-adjudicate the original issue and to declare the person incompetent without due process.

The judgment having been void ab initio, not anything done thereafter can cure the initial defect, except by commencement of new proceedings.

It is fundamental that in a proceeding such as here under consideration, statutory requirements must be strictly adhered to and, in the important matter of service of process, compliance therewith is mandatory before the Court acquires jurisdiction.

In the case of **Shaman v. Roberts, 87 Oh Ap 328 (1950)** the Court of Appeals for Franklin County held:

"1. A judgment obtained without service of process on the defendant is void ab initio.

2. The provisions of §11631 to §11643 GC, inclusive, apply to voidable judgments only and have no application to void judgments."

To the same effect see also:

**Snyder v. Clough, 71 Oh Ap 440; Levy v. Foley, 75 Oh Ap 220.**

For authorities of other jurisdictions which uphold the principle that notice is an essential element in such proceedings as are now before us, see also:

Simon v. Craft, 182 U. S. 427.

Barry v. Hall, 98 Fed. 2d 222.

In re Masters, 216 Minn. 553.

In re Application of Wellman, 3 Kan. App. 100.

In view of our decision on these questions, we think it unnecessary to consider other grounds of error assigned. Nevertheless, we are of the opinion that whatever may have been the condition of the appellant at the time of the original hearing, the finding that he was incompetent at the time of hearing to vacate and terminate the guardianship is, in our opinion, clearly against the manifest weight of the evidence.

For the reasons stated, the rulings and judgment of the Probate Court are reversed and the cause is remanded with instructions to grant the motions to terminate the guardianship and to restore the appellant to full custody and control of his estate, in conformity with this opinion. A journal entry may be drawn with appropriate orders in conformity herewith. Exceptions noted.

KOVACHY, J, SKEEL, J, concur.