IN RE MILLER.

[Cite as In re Miller (1980), 61 Ohio St. 2d 184.]

(No. 79-263—Decided February 6, 1980.)

*Mr. George W. Ledford,* for appellant.
*Ms. Lorine M. Reid,* for appellee.

SWEENEY, J.    We hold that R. C. 2151.38 is inapplicable to a proceeding for approval of a permanent surrender agreement under R. C. 5103.15 and 5153.16(B). Hence, R. C. 2151.38 does not bar the filing of a motion to vacate a R. C. 5153.16(B) consent, and we reverse the Court of Appeals in this regard.

R. C. 2151.38 reads, in pertinent part:

"When a child *is committed to***the permanent custody* of a***county children services board,***the jurisdiction of the juvenile court in respect to the child *so committed* shall cease and terminate at the time of commitment, except that if the***board***having such permanent custody makes application to the court for the termination of such custody, the court upon such application, after notice and hearing and for good cause shown, may terminate such custody at any time prior to the child becoming of age. The court shall make

disposition of the matter in whatever manner will serve the best interests of the child. *All other commitments made by the court shall be temporary* and shall continue for such period as designated by the court in its order, or until terminated or modified by the court, or until a child attains the age of twenty-one years." (Emphasis added.)

Pursuant to R. C. 2151.353(D), 2151.354(A), and 2151.355(A), the Juvenile Court may, upon adjudging a child abused, neglected, dependent, unruly or delinquent, order permanent commitment of such child to a county children services board. However, the Juvenile Court does not, by consenting to a permanent surrender under R. C. 5153.16(B), *commit* a child into the permanent custody of the board. Rather, the court judicially sanctions a private transfer of custody which cannot be legally consummated without the court's approval. In other words, for purposes of determining the applicability of R. C. 2151.38, a parental surrender pursuant to R. C. 5103.15 is not equivalent to a judicial commitment as authorized by R. C. Chapter 2151.

Other statutory provisions reflect the distinction between a R. C. Chapter 2151 commitment and a R. C. Chapter 5103 transfer of custody. Thus, R. C. 5103.152 provides, in part:

"(A) All children in the permanent custody of a public***organization***, pursuant to *either* section 2151.353 *or* 5103.15 of the Revised Code, shall be listed with the department of public welfare within ninety days after permanent custody is effective,***." (Emphasis added.)

Similarly R. C. 5103.151 provides, in part:

"(A) An annual review shall be made of every child placed in the care or custody of a public***organization***. This review shall be made by the agency having the custody of the child,****whether the agency received custody pursuant to court order under Chapter 2151 or pursuant to section 5103.15 of the Revised Code,***." (Emphasis added.)

R. C. 3107.07 provides that parental consent to an adoption is not required, although otherwise necessary pursuant to R. C. 3107.06, of the following:

"(C) a parent who has *relinquished his right to consent under section 5103.15* of the Revised Code; [or]

"(D) A parent whose parental rights *have been terminated by order of a juvenile court under Chapter 2151* of the Revised Code; * * * " (Emphasis added.)

R. C. 5153.16(B) empowers county children services boards to enter into agreements by which permanent custody of children is transferred to boards, provided juvenile court consent is obtained. County children services boards are separately required by R. C. 5153.16(C) to "[a]ccept custody of children *committed* to the board***by a court exercising juvenile jurisdiction." (Emphasis added.)

An agreement by a child's parents or legal guardian to surrender a child to the permanent custody of a certified association or institution described in R. C. 5103.15 constitutes a contract where accepted by such association or institution and when voluntarily made without fraud or misrepresentation.[4] Such a contract cannot be revoked by the parents or legal guardian absent the consent of the association or institution. *Kozak* v. *Lutheran Children's Aid Society* (1955), 164 Ohio St. 335. This court noted in the *Kozak* case, at page 340, that:

"***[R. C. 5103.15] has no connection with the law with reference to Juvenile Courts, the statutes concerning which are Sections 2151.01 to 2151.54, inclusive, together with Sections 2151.55, 2151.99 and 2153.01 to 2153.17, inclusive, Revised Code."

Our holding that the provisions of R. C. 2151.38 did not divest the Juvenile Court of jurisdiction to entertain appellant's motion to vacate the court's consent to the permanent surrender agreement is not, however, dispositive of this cause. Appellant argues that the Juvenile Court had no jurisdiction in the first instance to consent to the surrender agreement in that there was no service of summons on the child or its parent, and that the consent was therefore void and should be vacated.[5]

In support of this contention appellant cites a line of

---

[4] Appellant, not being a party to the surrender agreement, has no standing to assert fraud or misrepresentation in its inducement.

[5] Notably, failure of the court to issue summons on the appellant herself is not asserted as error herein, nor does appellant argue that she was entitled to service of process.

cases beginning with *Lewis* v. *Reed* (1927), 117 Ohio St. 152. That case held that until statutorily required notice of dependency proceedings is given to the mother of an allegedly dependent child, the jurisdiction of the Juvenile Court does not attach and a judgment of permanent commitment rendered in such dependency proceeding is void; subject to attack through *habeas corpus.* Similarly, in *In re Frinzl* (1949), 152 Ohio St. 164, this court held that until a parent or guardian is served with notice as required by statute, a Juvenile Court is without jurisdiction to make permanent a temporary commitment of a dependent or delinquent child.

These cases are distinguishable from the instant cause. No service of process is required by R. C. 5103.15 or 5153.16(B) prior to judicial consent being given to a voluntary agreement to surrender parental rights. Hence, failure to issue process upon Oschal's mother cannot be a jurisdictional defect such as would make any subsequently issued consent void *ab initio.*

R. C. 2151.28 provides that after "the complaint" has been filed, the Juvenile Court shall fix a time for hearing and direct issuance of summons. The Juvenile Court below held that the statute is not applicable to a R. C. 5153.16 consent proceeding. We agree. The "complaint" referred to in R. C. 2151.28 is described in the preceding section, R. C. 2151.27, and contains allegations that a child is a juvenile traffic offender, delinquent, unruly, abused, neglected or dependent. No such adversarial allegations are before a Juvenile Court in a permanent surrender consent proceeding. Similarly, appointment of a guardian ad litem is not required in such a proceeding by R. C. 2151.281.[6] By its express terms that statute deals with proceedings concerning an alleged or adjudicated delinquent, unruly, dependent, abused or neglected child.

---

[6] R. C. 2151.281 reads, in pertinent part:

"The court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated *delinquent, unruly, or dependent* child when:

"(A) The child has no parent, guardian, or legal custodian;

"(B) The court finds that there is a conflict of interest between the child and his parent, guardian, or legal custodian.

"The court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged *abused or neglected child.*" (Emphasis added.)

We reject appellant's contention that the Juvenile Court's consent was void in that it was procured by fraud on the part of the mother. A county children's services board is authorized by R. C. 5153.16(B) to enter into permanent surrender agreements with parents, guardians and legal custodians.[7] The statute clearly makes legal transfer of permanent custody to such a public body contingent upon consent to the transfer by the Juvenile Court. However, a proceeding to procure the court's consent is not in the nature of an adversary proceeding. See *In re Surrender Anne K.* (1972), 31 Ohio Misc. 218. It is the Juvenile Court's function in consenting to a permanent surrender to insure that the surrender is made by the parent voluntarily, with full knowledge of the legal import of the relinquishment of parental rights accomplished thereby; and to insure that the child welfare agency does not enter into improvident contracts.[8] See *In re Surrender Anne K., supra.* In view of the scope of the Juvenile Court's inquiry, Billie Jean was under no duty, absent questioning by the court, to volunteer the facts of her child's past history.

---

[7] The Juvenile Court correctly noted that appellant was not Oschal's legal custodian. See, by way of analogy, Juv. R. 2:

"As used in these rules:

"* * *

"(5) 'Custodian' means a person who has been granted custody of a child *by a court.*" (Emphasis added.)

See, also, R. C. 2151.011(B):

"As used in sections 2151.01 to 2151.99, inclusive, of the Revised Code:

"* * *

"(10) 'Legal custody' means a legal status created *by court order* which vests in the custodian the right to have physical care and control of the child and to determine where and with whom he shall live, and the right and duty to protect, train and discipline him and to provide him with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court." (Emphasis added.)

The written agreement executed by appellant and Oschal's mother on August 18, 1975, purportedly vesting custodial rights in appellant was of no legal effect. See R. C. 5103.16; *In re Perales* (1977), 52 Ohio St. 2d 89, 91 (fn. 2).

[8] As an additional safeguard to the rights of parents who are themselves minors, R. C. 5103.16 requires that where parental consent to surrender is given before an employee of the child welfare agency, that employee execute an affidavit to the effect that the legal rights of the parents have been fully explained to the parents,

Juv. R. 45 provides that:

"If no procedure is specifically prescribed by these rules, the court shall proceed in any lawful manner not inconsistent therewith."

The Juvenile Rules do not specifically prescribe a procedure to be followed by a Juvenile Court in determining whether to consent to a permanent surrender agreement. We find that the procedure followed by the Juvenile Court in the case at bar was neither unlawful nor inconsistent with the Juvenile Rules. Thus, the Court of Appeals properly determined herein that the Juvenile Court had jurisdiction to consent to the surrender, and we affirm the appellate court in this regard. The appellant has advocated no justification for vacating the judicial consent to the permanent surrender, other than lack of jurisdiction. Thus, the court did not err in affirming the dismissal of appellant's action.

For reason of the foregoing, the judgment of the Court of Appeals is reversed in part and affirmed in part.

*Judgment reversed in part*
*and affirmed in part.*

---

prior to the execution of the consent, and that the action was done after the birth of the child. One writer cites the following as an example of a form which has been used by the Cuyahoga County Welfare Department:

"You are advised that by signing such surrender you are permanently surrendering, releasing and giving up all present and future legal rights that you have or may possess in your above-named child and which you as a parent naturally have or would have in respect to your child; and that thereafter you will be in the same legal position as would be a person totally unrelated to your child.

"Among these legal rights in and to your child being permanently surrendered, released and given up by you now and irrevocably upon your signing the above referred to Permanent Surrender Of Child, but not necessarily limited to these, are the following rights:

"(1) The right of custody of your child including all present and future rights to have, control or possess your child, to see or visit your child, to determine or decide on the care, education, living surrounding, location and upbringing of your child;

"(2) The right of any possible future support of financial aid to you from your child, and of receiving the future earnings and any other property of your child;

"(3) The right of inheritance from your child, or through your child, which might otherwise legally be yours by reason of your being the mother of the child; and

"(4) The rights and privileges that now or in the future might be given by law to any parent in respect to the child of such parent." Sylvester, The Law of Adoption in Ohio, 2 Cap. U. L.R. 23, 29 (fn. 47).

CELEBREZZE, C. J., HERBERT, W. BROWN, LOCHER and HOLMES, JJ., concur.

PAUL W. BROWN, J., concurring in the judgment. I agree with the discussion of the issue herein, but conclude that the issue is raised by a party who has no standing.