**State**
**v.**
**Nero**
*[Cite as 2 AOA 171]*

*Case No. 1392*
*Athens County, (4th)*
*Decided April 4, 1990*

*R.C. 2909.05*
*R.C. 2921.34*
*R.C. 2923.02*
*R.C. 2941.40.1*
*R.C. 2945.73*

*Gwinn & Wallace, Mr. James A. Wallace, Athens, Ohio, for Appellant.*

*Athens County Prosecutor's Office, Mr. C. David Warren, Athens, Ohio, for Appellee.*

HARSHA, J.

This matter is before this court on appeal from the Common Pleas Court of Athens County wherein defendant was convicted of escape and vandalism.

Appellant through his counsel asserted the following assignments of error:

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR DISCHARGE FOR FAILURE TO BRING HIM TO TRIAL WITHIN THE TIME LIMITS SET BY R.C. 2941.401 and 2945.73.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL ON THE CHARGE OF ESCAPE.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT FOR A FELONY ON THE CHARGE OF VANDALISM WHEN IN FACT HE WAS CONVICTED OF A FIRST DEGREE MISDEMEANOR.

Appellant *pro se* asserted two additional assignments of error:

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO DISCHARGE FOR FAILURE TO OBSERVE HIS RIGHTS AS THEY ARISE UNDER R.C. 2941.401.

ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING DEFENDANT-APPELLANT COMPETENT TO STAND TRIAL WHERE DEFENDANT-APPELLANT HAD NOT RAISED HIS COMPETENCE TO STAND TRIAL.

We will address assignments of error number one and four together in which appellant contends that he was not brought to trial within speedy trial mandates of R.C. 2941.401 and/or R.C. 2945.73. R.C 2941.401 states in pertinent part:

"When a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance.

***

"The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof."

The statute unequivocally places the burden on the warden or the superintendent, who has knowledge of pending charges, to advise the prisoner of his right to make a request for final disposition of the untried indictment. In the case *sub judice*, there is no indication that appellant, who was incarcerated in the Ross Correctional Institute (RCI), was advised by the superintendent that he had a right to be brought to trial within one hundred eighty days after delivery of the requisite written notice. In *State v. Fitch* (1987), 37 Ohio Ap. 3d 159, the appellate court stated:

"The state legislature, in its wisdom, has elected to obligate the state to notify the accused of his right to make a demand for speedy trial disposition of pending indictments as well as the fact of such indictments. It would nullify the entire purpose of the statute if failure to give notice of the right would operate to relieve the state of its legal burden to try cases within rule.

"Absent such specific advice, the state cannot rely upon the prisoner's failure to make demand for speedy disposition but must count the time as having commenced upon the first triggering of the state's duty to give notice of the right to make demand for speedy disposition." *Id.* at 162.

Appellant was indicted on November 13, 1986 on the charges of escape and vandalism. He was arraigned on November 24, 1986. Because he was removed from RCI for arraignment and then returned, the superintendent had knowledge of the pending charges. Since the record does not reflect that appellant was advised of his rights pursuant to R.C. 2941.401, we find that the state's duty to advise the prisoner of his rights was triggered on November 24, 1986, the date of arraignment. Therefore, for purpose of computing the one

hundred eighty day period set forth in R.C. 2941.401, as well as the standard speedy trial time set forth in R.C. 2945.71, the time starts running on November 24, 1986.

On November 24, 1986, appellant was represented by the county public defender's office for arraignment only. On that same date, appellant requested court appointed counsel which operated to toll time pursuant to R.C. 2945.72(C).[1] The record reflects that the court filed an entry appointing trial counsel on December 22, 1986. Therefore, the period of November 24, 1986 to December 22, 1986 was tolled due to delay necessitated by appellant's lack of counsel. We not parenthetically that there was no allegation nor any evidence that the trial court demonstrated a lack of diligence in providing counsel.

The trial court set the matter for trial on February 24, 1987. By way of an agreed entry the trial court granted a request for a continuance of that trial date. The entry contained a signed express waiver of appellant's speedy trial rights. We find that this resulted in a tolling of the one hundred eighty day period pursuant to R.C. 2945.72(H). The amount of time chargeable to the state from the appointment of counsel (December 22, 1986) to appellant's motion to continue (February 24, 1987) is sixty-four days.

Time continued to toll until the matter was set again for trial on March 26, 1987. Prior to trial, the state requested a continuance thereby starting speedy trial time to run again. The court rescheduled the matter for trial for April 21, 1987. The record reflects that appellant tentatively agreed to enter a negotiated plea. However, on that date, appellant tendered a plea of not guilty by reason of insanity. The court accepted this plea and on April 27, 1987 filled an entry ordering appellant to submit to psychological testing. The court ordered that a written report evaluating appellant's mental status at the time of the alleged offense be filed by Shawnee Forensic Center within thirty days of the entry being filed.

We find that appellant's plea of not guilty by reason of insanity operated to toll the speedy trial time as of the date it was tendered. As clearly espoused by the Ohio Supreme Court in *State v. Spratz* (1979), 58 Ohio St. 2d 61, "[t]he time within which an accused must be brought to trial by virtue of R.C. 2945.71 is tolled by the accused's plea of not guilty by reason of insanity at the time of arraignment or insanity at the time the crime was committed." The amount of time chargeable to the state from the date of the state's motion for continuance (March 26, 1987) to the date on which appellant tendered his not guilty by reason of insanity plea. (April 21, 1987) is twenty-six days. We also note any delay caused by appellant's withdrawal from the plea agreement is chargeable to the appellant.

We next consider the question of when speedy trial time commences to run again after a not guilty by reason of insanity plea is tendered. In addressing a similar issue, the Franklin County Court of Appeals has held:

"Where *** the state has set a schedule in motion which will enable it to comply with the speedy trial mandate, by setting aside on its trial docket for trial of the case, a date which is within the time limits of R.C. 2945.71, and defendant's counsel interrupts this schedule and interposes delay by seeking a determination of his client's competency to stand trial, then the speedy trial deadline will be extended not only by the time consumed in determining defendant's competence, but also an additional period of time reasonably necessary to put the schedule back on tract by setting aside another date on the court's trial docket for trial of the case." *State* v. *Pate* (June 2, 1981), Fra. App. No. 81AP-20, unreported, at 4.

In *Pate*, the defendant's counsel initiated competency proceedings, causing a previously set trial date to be vacated. The defendant was found to be incompetent; however, he was found to be competent to stand trial on November 12, 1980. The court set a new trial date of December 16, 1980, which was within thirty-four days of defendant being deemed competent to stand trial. Defendant filed a motion to discharge claiming that the December 16, 1980 trial date exceeded the ninety day speedy trial limit by fifteen days.

The court taking all factors into consideration held that "'any period of delay necessitated by reason of a *** proceeding *** instituted by the accused' [R.C. 2945.72(E)] includes a period of time reasonably necessary for the court to again bring the case to trial after it has been determined that defendant is competent to stand trial." *Id.*

In applying the rationale of the *Pate* decision, we have found that appellant's tendering of a not guilty by reason of insanity plea resulted in the tolling of time for "any period of delay necessitated by reason of a *** proceeding *** instituted by the accused." R.C. 2945.72(E). Also, we adopt the *Pate* court's statement that the tolling period includes a

period of time *reasonably necessary* for the court to reschedule the trial.

In the case at bar, the trial court accepted appellant's not guilty by reason of insanity plea on April 21, 1987, thereby causing the trial court to set aside its trial docket for trial of the case. The April 21 trial date was clearly within the one hundred eighty day time limit. The not guilty by reason of insanity plea operates to toll the time for the period required to complete a psychiatric examination and prepare a written report, as well as the "additional period of time reasonably necessary" to reschedule the vacated trial date. *Id.* at 4.

After appellant tendered his not guilty by reason of insanity plea, the court ordered appellant out for an examination which was to be completed within thirty days of the entry, being on or before May 27, 1987. The record clearly reflects that nothing was done with the case until the appellant filed a *pro se* motion for discharge on August 20, 1987, some eighty-five days after the examination was to have been completed. Appellant was not evaluated as ordered, nor was the matter reset for trial within that period. It was only after appellant filed his motion for discharge that he was finally contacted for his examination (August 25, 1987). On August 28, 1987, the court finally reset the vacated April 21 trial date for September 24, 1987.

Appellant contends that speedy trial time started running on May 22, 1987, the date appellant alleges the report of the evaluation was due. The journal entry ordered that the report to be filed with the court thirty days after the entry was filed. The entry was filed April 27, 1987. Therefore, the report was not due until May 27, 1987. We note that R.C. 2945.39 requires that "[t]the examiner shall complete the examination within thirty days after the court's order ***." This statute also requires the examiner to file a written report with the court and the parties; however, the statute does not render any time frame for filing of this report.

Since the trial was not rescheduled after the plea and resulting examination until September 24, 1987, we must determine whether or not such a delay was reasonable within the meaning of *Pate, supra.* We find that it was not. Based upon the facts in this case, it was unreasonable for the trial court to schedule a trial date nearly five months after the vacated date of April 21, 1987. The court had rescheduled the trial twice before appellant's not guilty by reason of insanity plea. The first time,

the court rescheduled the trial within thirty days of the vacated trial date. The second time, the court was able to reschedule the trial date within twenty-six days of the vacated date. The record clearly indicates an unexplained and undocumented three month extension in completing the examination coupled with a rescheduled trial date which went far beyond the time previously used by the court to reschedule a trial. This delay cannot be included in the tolling of time where there is no evidence of mitigating factors. There is no evidence to indicate that appellant was in any way responsible for the extended period for resetting the trial. There is absolutely no evidence or entry which would explain the court's or the state' inability to bring the appellant to trial in a more timely fashion. Thus, time again running on May 27, 1987, the date the report was due.

On August 20, 1987, appellant filed a motion for discharge specifically addressing the one hundred eighty day limit set forth in R.C. 2941.401. This motion also caused time to toll pursuant to R.C. 2945.72(E). The number of days which is chargeable to the state from the date of arraignment to the date of the motion to discharge is one hundred seventy-five days. Therefore, when appellant filed his August 20, 1987 motion for discharge, the state was well within the one hundred eighty day period to bring appellant to trial. An entry denying the motion was filed September 1, 1987, at which point time began to run again (time was not tolled under *Pate* until the new trial date, September 24, 1987 because of our finding above that the rescheduling delay was unreasonable). On September 24, 1987, appellant filed a motion for a continuance and a waiver of time pending completion of his mental examination. This obviously stopped time from running. Accordingly, an additional twenty-three days, from September 1 to September 24, 1987, making of total of one hundred ninety-eight days in chargeable to the state. This would have entitled appellant to a discharge under 2941.01, however appellant did not review the motion to discharge at any time prior to a jury trial on March 8, 1988.

The failure to review the motion results in a waiver of that defense. See *Worthington v. Ogilvy* (1982), 8 Ohio App. 3d 25. Accordingly, we find this portion of the appellant's first assignment of error and appellant's fourth assignment of error to be not well-taken and are hereby overruled.

Also in appellant's first assignment of error, the contends that he was not brought to trial within the period set forth in the speedy trial statutes set forth by R.C. 2945.71 *et seq.* Specifically, R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending *** [s]hall be brought to trial within two hundred seventy days after his arrest." Once a defendant has demonstrated that the prescribed number of days has passed, he has established a *prima facie* case for discharge pursuant to R.C. 2945.75(B). *State v. Reeser* (1980), 61 Ohio St. 2d 189, 191. The state then bears the burden of proving that actions or events chargeable to the defendant, under a subsection of R.C. 2945.72, extended or tolled enough time so that the defendant was brought to trial within the statutorily mandated period. The tolling provisions permitted by R.C. 2945.72 are to be construed strictly against the state. *State v. Singer* (1977), 50 Ohio St. 2d 103, 109.

In applying the pertinent statutes and case law to the case at hand, we find that the number of days actually chargeable to the state falls within the two hundred seventy day limitation set forth in R.C. 2945.71(C)(2). From the date of appellant's arraignment (November 24, 1986) until the date of appellant's conviction following a jury trial (March 8, 1988), four hundred sixty-eight days elapsed. Appellant, therefore, has established a *prima facie* case for discharge; however, we find that a significant portion of that time was tolled pursuant to R.C. 2945.72.

We will begin counting the time again at day one hundred ninety-eight, September 24, 1987 when appellant filed a motion for continuance and a waiver of speedy trial time pending completion of his mental examinations. This motions and waiver tolled speedy trial time pursuant to R.C. 2945.72(H). The matter was set again for trial on December 1, 1987; however, that date was vacated to provide additional time for appellant to be examined, at appellant's request, by an independent expert to determine his competency to stand as well as his mental condition at the time of his offense. The reports were to be filed with the court on or before January 3, 1988.

The matter was scheduled for a competency hearing on January 15, 1988. The hearing was continued to January 22, 1988 so that appellant could be present. After reviewing the record, it is clear that the court only received reports on appellant's mental condition at the time he allegedly committed the crimes in question.

Apparently, appellant refused to cooperate with the second independent evaluation which also was to address the issue of appellant's competency. On February 1, 1988, the court found appellant competent to stand trial.

Also, at the January 22 hearing, appellant renewed a number of motions to suppress. Therefore, these motions operated to toll the running of the statute of limitations pursuant to R.C. 2945.72(E) until the court rendered an opinion, which it did on February 1, 1988. Time continued to toll to include a period of time reasonably necessary to reschedule the trial following the competency hearing. *Pate, supra.* The court did reschedule the trial for March 8, 1988, which was thirty-five days after appellant was found competent to stand trial. Appellant was found guilty on March 11, 1988.

We hold that no time after September 24, 1987 is chargeable to the state. Thus, the total number of days chargeable to the state is one hundred ninety-eight days, well within the two hundred seventy day time period of R.C. 2945.71. Accordingly, we find appellant's first and fourth assignment of errors not be well-taken.

Appellant's second assignment of error asserts that the trial court improperly overruled appellant's motions for judgment of acquittal on the charge of escape. Appellant asserts that Ohio statutes contain a conflict as to the degree of the offense with which appellant should have been charged for the offense of attempted escape. As correctly noted by appellant, the escape statute, R.C. 2921.34, mandates that escape is a fourth degree felony even where the proscribed conduct constitutes an attempted escape as opposed to an actual escape. Appellant contends that this statute directly contravenes the attempt statute, R.C. 2923.02(E), which provides that an attempt to commit an offense is an offense of the next lesser degree than the offense attempted. Therefore, Appellant would have this court apply R.C. 2923.02(E) to the case at bar, thus rendering the offense of attempted escape a first degree misdemeanor.

We find that there is no conflict between the above cited statutes. The Legislative Service Commission Commentary to R.C. 2923.02 provides:

"1973: This section is a general attempt section which consolidates several specific attempt provisions in former law, and with three exceptions, establishes an attempt to commit any offense as an offense in itself. The exceptions are an attempt to commit conspiracy,

an attempt to commit a minor misdemeanor, *an attempt to commit any offense which in itself is defined as an attempt - in these cases attempt is not an offense."* (Emphasis added.)

The escape statute, R.C. 2921.34, defines the offense of escape to include the offense of attempted escape, specifically:

"No person, knowing he is under detention, or being reckless in that regard, shall purposely break or *attempt* to break such detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence is intermittent confinement."

Where legislative intent is clearly expressed, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged. *Wachendorf v. Shaver* (1948), 149 Ohio St. 231. Therefore, based upon the clear legislative intent, attempted escape is not an offense in itself under the general attempt statute, R.C. 2923.02. Instead, it is encompassed under the specific escape statute. Accordingly, we find appellant's second assignment of error not to be well-taken.

Appellant asserts as his third assignment of error that the trial court erred in sentencing him for a felony on the charge of vandalism when in fact he was convicted of a first degree misdemeanor. Appellant contends that the indictment only set forth an offense which is a first degree misdemeanor since it charged appellant with vandalism pursuant to 2909.05, without specifying any particular subsection.

In the indictment, the state charged that appellant "did knowingly cause serious physical harm to property that is owned, leased or controlled by a governmental agency" and cited to the general vandalism statute, R.C. 2909.05. As set forth in its subsections, R.C. 2909.05 provides six separate and independent types of vandalism. Appellant argues that since the state failed to cite a specific subsection and the jury failed to state an express determination of value as provided by R.C. 2909.11(A), appellant only may be sentenced for a first degree misdemeanor. R.C. 2941.05, reads as follows:

"In an indictment or information charging an offense, each count shall contain, and is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of

the section of the Revised Code describing the offense or declaring the matter charged to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is charged." See also Crim. R. 7(B) which contains similar language and the requirement that the indictment "state the numerical designation of the statute . . .". In the case at hand, the indictment clearly informed the petitioner of the crime with which he was charged and subsequently was convicted. The inclusion of the subsection would have added nothing to the description of the offense. It would have told the average layman, in fact the average lawyer, nothing more than that which the actual allegations in the indictment had already recited. The failure to include such a subsection in no way invalidated the indictment. *Foutty v. Maxwell* (1962), 174 Ohio St. 35, 38.

The indictment and charge to the jury contained all the necessary and essential allegations to constitute a charge of vandalism. R.C. 2909.11(A) requires proof of a specific dollar amount when the accused is charged with violating division (B)(1)(a) or (C) of the vandalism statute. Here, the language in the indictment filed against appellant clearly sets forth an offense of vandalism under R.C. 2909.05(B)(2). The state was not required to prove a specific value amount. It merely had to demonstrate that "serious physical harm" had been caused to governmental property by appellant. Upon reviewing the evidence, we find that there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. Therefore, we find appellant's third assignment of error not to be well-taken.

Appellant's fifth assignment of error raised by appellant *pro se* asserts that the trial court erred as a matter of law in finding appellant competent to stand trial where appellant had not raised his competence to stand trial. On January 22, 1988, the trial court held a hearing in which a number of appellant's pre-trial motions were heard. The court specifically found that appellant was competent to stand trial. In its entry filed December 4, 1987, the trial court ordered that appellant be evaluated by an independent examiner to determine appellant's competency to stand trial as well as his mental condition at the time of the offense. R.C. 2945.37 provides that "the court, prosecutor, or defense may raise the issue of defendant's competence to stand trial." It is completely

irrelevant whether appellant or the trial court placed appellant's competence at issue. Also, appellant did not object to the court's finding. As a general rule, "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Awan* (1986), 22 Ohio St. 3d 120, 122. Appellant has failed to demonstrate that the court's finding of competence to stand trial affected appellant's substantial rights especially where a trial court is given the power statutorily to raise the issue of an accused's competency to stand trial.

Accordingly, we find appellant's fifth assignment of error not to be well-taken.

*Judgment affirmed.*

STEPHENSON, J., Concurs in Judgment and Opinion.
GREY, J., Dissents with Attached Dissenting Opinion.

GREY, J., dissenting:

I respectfully dissent.

I cannot agree with the holding of the majority's opinion, that all pre-trial motions made by a defendant are chargeable to the defendant and toll the speedy trial time pursuant to R.C. 2945.72(E). Rather, I believe that no pre-trial motion made by the defendant shall toll the speedy trial statute unless the motion requires action by some person other than the trial judge.

Ordinary pre-trial motions to suppress or compel discovery, for example, often languish in the trial court for months, undecided. During that time, under the majority holding, the clock stops running and the speedy trial statute is tolled. Charging such a delay, to the defendant, destroys the legislative purpose of the speedy trial statute.

Before R.C. 2945.72 was enacted, prosecutors and courts could delay cases, and regardless of the constitutional question, it was found over and over in studies of criminal prosecutions that the quicker the prosecution, the greater the deterrent affect. The speedy trial guidelines were adopted as much for society's benefit as for the defendant's.

If we adopt a rule that the time taken from the filing of a motion to a decision on that motion is chargeable to the defendant, we will revert to the pre-R.C. 2945.72 standard. That statute puts a burden on the trial court to decide pre-trial motions promptly, but if the time taken by the court to decide is chargeable to the defendant, what incentive or sanction is there for the trial judge? What incentive is there for any prosecutor to ever respond to a request for discovery? If he responds, the clock continues. If he refuses discovery and the defendant must resort to a motion to compel, then there is actually a sanction against the prosecutor for complying with the discovery request. If a pre-trial motion by the defendant causes the clock to stop, a judge can decide it right away and then start the clock again. Or he can delay deciding the motion and try to catch up on his other cases. What incentive, what sanction is there for a trial judge to get these motions decided?

The majority rule will directly result in a return to the situation we had before the legislature adopted R.C. 2945.72. I recognize that the trial judges are under enormous pressure to get the ever increasing volume of cases out, but the majority holding will not alleviate this problem. While allowing delay to be charged to the defendant may ease the pressure on the trial judges temporarily, the backlog of cases will continue to mount. If felony cases are being filed at a rate of 300 per year per judge, they must be disposed of at a rate of 300 per year per judge, and charging the time to the defendant will not alleviate the problem. This is a tough row to hoe for trial judges, but they can only do the best they can. A trial judge may not have as much time as he would like to devote to a pre-trial motion, but until steps are taken to reduce the case load per judge, delaying one case and charging the delay to the defendant is not going to solve the problem. Society's interests in a speedy trial will not be served.

Nor will the constitutional right to a speedy trial be served. Such a delay denies a defendant his basic constitutional rights. In essence, a defendant is being forced to choose between his Fifth Amendment right to a speedy trial and any other constitutional rights such as the Fourth Amendment right to be free from unreasonable searches and seizures. This was hardly the legislature's intent when it created R.C. 2945.72(E).

A defendant should not be charged with the time that it takes the state or a court to respond to or decide any of his pre-trial motions. Clearly, Nero was and this denied him his right to a speedy trial pursuant to R.C. 2945.71.

Thus, I dissent.

¹ R.C. 2945.72 does not specifically state that the tolling provisions therein are applicable to R.C. 2941.401. However, R.C. 2941.401 states, in pertinent part, "except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance." The General Assembly, in enacting R.C. 2945.72, has legislated what are reasonable continuances. We therefore conclude that the factors set forth in R.C. 2945.72 are applicable to R.C. 2941.401.