DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Crystal H., ("Mother") appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, D.C.H., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 I. {¶ 2} Mother is the natural mother of D.C.H., born December 30, 2002, as well as two other children who are not at issue in this appeal. CSB became involved with the family shortly after the birth of D.C.H. due to the infant's medical condition, which required strict dietary limitations, and the agency's concerns that Mother would not be able to meet the child's special needs. CSB had a prior history with Mother and her other children that initially stemmed from concerns about domestic violence in the home.
 {¶ 3} On October 29, 2004, CSB moved for permanent custody of D.C.H., alleging, among other things, that permanent custody was in the best interest of D.C.H. because the parents had failed to substantially remedy the conditions that had caused her removal from the home. Following the presentation of CSB's evidence at the permanent custody hearing, both parents voluntarily surrendered their parental rights and the trial court placed D.C.H. in the permanent custody of CSB. Mother appeals and raises three assignments of error that will be consolidated for ease of review.
 II. A. First Assignment of Error
"THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO APPOINT A GUARDIAN AD LITEM FOR THE APPELLANT."
 Second Assignment of Error
"APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF HER TRIAL COUNSEL."
 {¶ 4} We will address the first two assignments of error together because they are based on the same underlying argument. Mother contends that the trial court committed plain error by failing to appoint her a guardian ad litem and that her trial counsel was ineffective for failing to request that a guardian ad litem be appointed on her behalf.
 {¶ 5} Rather than reiterating the standard of review for plain error and ineffective assistance of trial counsel, we will confine our review to the basic premise of Mother's arguments because she has failed to demonstrate any error in this regard. Mother contends that both R.C. 2151.281(C) and Juv.R. 4(B)(3) mandated the appointment of a guardian ad litem to protect her interests in this case.
 {¶ 6} R.C. 2151.281(C) provides:
"In any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent * * *, the court shall appoint a guardian ad litem to protect the interest of that parent."
 {¶ 7} Juv.R. 4(B)(3) likewise provides:
"The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when * * * [t]he parent * * * appears to be mentally incompetent[.]"
 {¶ 8} Mother contends that she was entitled to have a guardian ad litem appointed to protect her interests because, given her prior history of mental health issues, she "appear[ed] to be mentally incompetent." Although neither the juvenile rules nor the juvenile code provide a definition of "incompetent," that term is defined in the criminal code. In the context of a criminal trial, a defendant is deemed to be incompetent to stand trial, if, because of her present mental condition, she "is incapable of understanding the nature and objective of the proceedings against [her] or of assisting in [her] defense[.]" R.C. 2945.37(G).
 {¶ 9} The record reveals only the following about Mother's mental health issues: several vague references to Mother having a prior diagnosis of depression, bipolar disorder, and borderline personality disorder; that, at some time in the past, she had been prescribed Prozac and Lithium; and that she sometimes did not take her medications. A mere diagnosis of a mental illness does not establish incompetence, however. See In re Luzader
(Dec. 3, 1997), 9th Dist. No. 18282, at *4-5. There is nothing in the record to indicate the extent to which, if at all, Mother's mental health issues impeded her ability to understand and participate in these proceedings. Mother's case plan required her to obtain a current mental health assessment, but she never did so. All references to Mother's mental illness were based on some prior diagnosis, which may or may not have been verified by a current assessment by a mental health professional.
 {¶ 10} Moreover, the record in this case actually demonstrates that Mother did appear to understand the nature of these proceedings, and she even took affirmative steps to attempt to assist in her case. On October 20, 2004, the trial court magistrate received a letter from Mother, who apparently knew that she could not be present at an upcoming hearing. The letter was read into the record as follows:
"Dear Magistrate Christman:
"I am writing you in regards to [D.C.H.]. As you probably know I am her mother, Crystal [H.] I understand that there will be [a] hearing in your Court on October 26, 2004. I am still incarcerated until February 15, 2005. My judicial release was just denied. So I will be finishing my sentence. It is also my understanding that Children Services Board want[s] to put her up for adoption. I have spoken with my case Worker once Eileen Kostich. All she has sent me was a Case Plan. While I have been incarcerated I went through 7 weeks of drug abuse classes called Changing Faces. Currently I am in anger management classes. I am also getting help for my bipolar with medication. None of this might matter, but since I can't be there in the Court, can you please say something on the record about [this] letter. I now understand I have to help myself before anybody and Your Honor I am truly trying. I have had so much time to sit down and put myself together. I still would like a chance with [D.], but I have been told it is over. Please know I am very regretful for my action and the bad choices I have made. [D] means the world to me and it will truly break my heart if I lose her. If there is anyway you can postpone this until February, it would be very good, a few months won't affect things either way. So can you please put this letter on the record? Thank you for taking the time to read this letter.
"Thanks again,
Crystal [H.]"
 {¶ 11} From the content of the letter, it appeared that Mother had a fairly good understanding of the nature of the proceedings including the status of her case, that she could potentially lose custody of her child forever, that she needed to remedy some of her poor choices that had caused this situation, and that there was a need for her to communicate to the court and to get that communication on the record.
 {¶ 12} During the permanent custody hearing, the caseworker testified that Mother had contacted her twice from prison, once to request a case plan and once about the upcoming hearing. The caseworker said nothing about Mother having any difficulty communicating with her or understanding what she said.
 {¶ 13} The record further suggests, as there is nothing on the record to the contrary, that Mother cooperated at the permanent custody hearing without any inappropriate outbursts or disruptive conduct. See State v. Cowans (1999),87 Ohio St.3d 68, 95 (Moyer, C.J., dissenting, and noting that defendant's outbursts and inappropriate behavior might have suggested a lack of competence to waive the mitigation stage of his capital trial).
 {¶ 14} After CSB presented its case, counsel represented to the court that Mother had decided to relinquish her parental rights. The trial court thoroughly questioned Mother to determine whether she was relinquishing her parental rights voluntarily, knowingly and intelligently. Mother's answer to each question was appropriately responsive. There is nothing in the record to suggest that she appeared incompetent at the time she voluntarily relinquished her parental rights.
 {¶ 15} Consequently, Mother has failed to demonstrate that the trial court erred for failing to sua sponte appoint a guardian ad litem for Mother or that her trial counsel was ineffective for failing to request such an appointment. The first and second assignments of error are overruled.
 B. Third Assignment of Error
"THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT APPROVED THE SURRENDER OF PERMANENT CUSTODY BY APPELLANT WITHOUT REQUIRING COMPLIANCE BY THE PARTIES WITH STATUTORY REQUIREMENTS."
 {¶ 16} Through her final assignment of error, Mother contends that the trial court erred in failing to comply with the requirements of R.C. 5103.15(B)(1). R.C. 5103.15(B)(1) provides for a voluntary surrender of permanent custody by a parent to a children services agency by agreement. As CSB and the guardian ad litem correctly note in their appellate briefs, such a contractual voluntary surrender of parental rights is not what transpired in this case and, consequently, R.C. 5103.15 does not apply.
 {¶ 17} R.C. 5103.15 applies only to private, contractual transfers of permanent custody by a parent to a children services agency and provides procedures by which the trial court may sanction that transfer of custody. The Ohio Supreme Court has repeatedly emphasized that R.C. 5103.15 has no application to cases in which the child has been adjudicated neglected or dependent and is under the jurisdiction of the juvenile court. See, e.g., In re Miller (1980), 61 Ohio St.2d 184, 189; Kozakv. Lutheran Children's Aid Society (1955), 164 Ohio St. 335,341.
 {¶ 18} Because the trial court was not required to comply with R.C. 5103.15, it did not err in failing to do so. The third assignment of error is overruled.
 III. {¶ 19} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Moore, J., Concur.