OPINION
{¶ 1} This appeal stems from an Ashtabula County Court of Common Pleas, Juvenile Division, judgment in which the court denied appellant, Shahara Young's, motion to revoke her voluntary surrender of parental rights.
 {¶ 2} Appellant is the biological mother of Gaje' Young ("the minor child"), born November 28, 2005.[1] The minor child tested positive for cocaine at birth. Appellant admitted to using cocaine one week prior to the birth of the minor child.
 {¶ 3} On November 29, 2005, appellee, Ashtabula County Children Services Board, obtained ex parte custody of the minor child, alleging he was abused.[2] Appellee filed a complaint for temporary custody on November 30, 2005. That same day, the juvenile court appointed the Ashtabula County Public Defender to represent appellant. The following day, December 1, 2005, at the emergency shelter care hearing, the juvenile court granted appellee temporary custody of the minor child and appointed a guardian ad litem for the child.
 {¶ 4} On December 7, 2005, pursuant to R.C. 5103.15(B), appellant executed a permanent surrender of her parental rights with respect to the minor child. Her attorney was not present at the time she signed the permanent surrender. On December 8, 2005, appellee filed a motion for court consent of the permanent surrender granting permanent custody.
 {¶ 5} On December 12, 2005, the court held a hearing, at which appellant appeared with her attorney. The court found that appellant signed a permanent surrender of the minor child, and further found the minor child to be abused.[3] On December 14, 2005, the juvenile court judge approved appellant's permanent surrender, finding it to be in the minor child's best interests.
 {¶ 6} On March 23, 2006, appellant filed a motion to revoke her voluntary surrender of parental rights. The juvenile court held a hearing on the matter on April 18, 2005.
 {¶ 7} In his opening statement, appellant's counsel made it clear that appellant was not alleging that, "any fraud or neglect or undo influence over her regarding her signing of these papers" had occurred. Further, he stated that appellant, "basically, has indicated to me that she has changed her mind" regarding the surrender.
 {¶ 8} At the hearing, the juvenile court questioned appellant under oath. The judge asked appellant, "what has transpired that has lead you to this motion[?]" Appellant responded, "I think I made a huge mistake. I said something I can't live. The decision I made. I'd rather see him come home to me than to be adopted out. There was some mistakes — I don't plan to parent any more kids. I had my tubes tied. I am his mother. He has a brother. I'm trying to get myself together. I just would like to see my boys together."
 {¶ 9} On April 20, 2006, the juvenile court denied appellant's motion to revoke her permanent surrender. It is from this judgment that appellant filed her timely notice of appeal, raising the following sole assignment of error:
 {¶ 10} "The juvenile court erred in not permitting appellant to withdraw her surrender of parental rights."
 {¶ 11} In her assignment of error, appellant essentially argues that her permanent surrender should have been revoked because she had a right to have her appointed counsel present when she signed it. She contends that because, "[t]he termination of parental rights is `the family law equivalent of the death penalty[,]'" citing In re Sheffey, 11th Dist. No. 2005-A-0063,2006-Ohio-619, and because the Juvenile Rules of Procedure and statute guarantee right to counsel for indigent parties in juvenile proceedings, that it was "erroneous plain error for the juvenile court to deny appellant's motion to revoke her surrender of parental rights."
 {¶ 12} R.C. 5103.15(B)(1) provides that: "[s]ubject to, except as provided in division (B)(2) of this section, juvenile court approval, the parents, guardian, or other persons having custody of a child may enter into an agreement with a public children services agency or private child placing agency surrendering the child into the permanent custody of the agency. An agency that enters into such an agreement may take and care for the child or place the child in a family home.
 {¶ 13} "A private child placing agency or public children services agency that seeks permanent custody of a child pursuant to division (B)(1) of this section shall file a request with the juvenile court of the county in which the child has a residence or legal settlement for approval of the agency's permanent surrender agreement with the parents, guardian, or other persons having custody of the child. Not later than fourteen business days after the request is filed, the juvenile court shall determine whether the permanent surrender agreement is in the best interest of the child. The court may approve the permanent surrender agreement if it determines that the agreement is in the best interest of the child and, in the case of an agreement between a parent and an agency, the requirements of section5103.151 (5103.15.1) of the Revised Code are met. The agency requesting the approval of the permanent surrender agreement shall file a case plan, prepared pursuant to section 2151.412
(2151.41.2) of the Revised Code, with the court at the same time that it files its request for the approval of the permanent surrender agreement."
 {¶ 14} In Kozak v. Lutheran Children's Aid Soc. (1955),164 Ohio St. 335, syallabus, the Supreme Court of Ohio held:
 {¶ 15} "[u]nder Section 5103.15, Revised Code, where the parents, guardian, or other persons having the custody of a child make an agreement surrendering such child into the permanent custody of an association or institution of this state, established for the purposes of aiding, caring for, and placing children in homes * * *, and where such agreement is voluntarily made, without fraud or misrepresentation, and is accepted by the association or institution, the agreement is irrevocable except with the consent of the association or institution."
 {¶ 16} The Supreme Court reaffirmed its holding in Kozak inIn re Miller (1980), 61 Ohio St.2d 184, 189, where it citedKozak, and stated, "[a]n agreement by a child's parents or legal guardian to surrender a child to the permanent custody of a certified association or institution described in R.C. 5103.15
constitutes a contract where accepted by such association or institution and when voluntarily made without fraud or misrepresentation. * * * Such a contract cannot be revoked by the parents or legal guardian absent the consent of the association or institution." (Footnote omitted.)
 {¶ 17} Under R.C. 5103.15, a parent can enter into an agreement with a public children services agency for "temporary custody or surrender of permanent custody." Thus, the Supreme Court concluded that, "[a] temporary surrender may, of course, be revoked, but a permanent surrender is exactly what its name signifies — one made forever." Kozak, supra, at 342. "If an agreement for such permanent surrender can be withdrawn, it would seem silly to provide in [R.C. 5103.15] for both a temporary surrender and a permanent surrender. There would be no difference between them." Id.
 {¶ 18} In the case sub judice, appellant does not allege any fraud, misrepresentation, or undue influence in her motion to revoke her permanent surrender. She stated that she simply made a mistake. Unfortunately, appellant's change of heart is not one of the reasons in which a parent may withdraw her permanent surrender.
 {¶ 19} Further, appellant's contention that her permanent surrender is invalid because she signed it when her attorney was not present is without merit.
 {¶ 20} Juv.R. 4(A) provides that: "[e]very party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."
 {¶ 21} R.C. 2151.28(F)(1) mandates that the juvenile court state in the summons, with respect to an adjudicatory hearing or a shelter care determination, "that any party is entitled to counsel in the proceedings and that the court will appoint counsel or designate a county public defender or joint county public defender to provide legal representation if the party is indigent."
 {¶ 22} These rules ensure that indigent persons are represented by counsel during juvenile court proceedings, which are adversarial proceedings. Here, on November 30, 2005, prior to the shelter care hearing, the juvenile court appointed the Ashtabula County Public Defender to represent appellant in the juvenile court proceeding. Seven days later, appellant voluntarily executed a permanent surrender of the minor child to appellee pursuant to R.C. 5103.15. Appellant's counsel was not present when she signed it.
 {¶ 23} "R.C. 5103.15 applies only to private, contractual transfers of permanent custody by a parent to a children services agency and provides procedures by which the trial court may sanction that transfer of custody." In re D.C.H, 9th Dist. No. 22648, 2005-Ohio-4257, at ¶ 17. The "[j]uvenile [c]ourt['s] consent to an agreement surrendering permanent custody of a child to a county children services board, pursuant to R.C. 5103.15 and5105.16(B), is not an adversary proceeding * * *." Miller,
supra, at paragraph one of the syllabus. Thus, neither the statute, nor the rules, contemplates the right of an indigent person to have an attorney present during a private, contractual transfer of permanent custody.
 {¶ 24} Furthermore, parents have the additional safeguard of having such surrender to a public agency approved by the juvenile court. In re Black (Nov. 20, 1996), 3d Dist. No. 4-96-17, 1996 Ohio App. LEXIS 5536, at 6. "An agreement by a parent with the welfare department for permanent surrender of a child prior to consent of the juvenile court is not only revocable by the parent prior to consent of the juvenile court, but such revocation also operates to dissolve the offer to surrender." In re Williams
(1982), 7 Ohio App.3d 324, paragraph one of the syllabus.
 {¶ 25} The foregoing authority, statutory framework, and Rules of Juvenile Procedure appear to control the outcome here, i.e., the attendance of a parent's counsel is not mandated during discussions leading to a temporary or permanent surrender of custody. Although it would seem that the fibers of common sense and due process dictate that the better procedure would be to undertake efforts to alert a parent's attorney that such discussions are about to occur, we concede that this is not the case.
 {¶ 26} There is nothing in the record to suggest that appellee did not properly comply with R.C. 5103.15, and appellant is not alleging so. According to the permanent surrender, appellee counseled appellant and discussed alternatives to surrender, including birth parent counseling, foster care, and kinship placement. Moreover, according to the trial court's December 12, 2005 judgment entry, appellant appeared in court with her attorney. The judgment entry further indicates that at this hearing, the court made a finding that appellant "signed a permanent surrender." Appellant could have withdrawn her permanent surrender at that point, as the trial court judge had not yet consented to it. Subsequent to that hearing, on December 14, 2005, the trial court judge executed the permanent surrender, approved it, and found it to be in the minor child's best interests.
 {¶ 27} Appellant has not alleged that because her attorney was not present at the time she signed the permanent surrender, that appellee committed fraud, misrepresented anything to her, or unduly influenced her. She changed her mind three months after the juvenile court approved of the permanent surrender. Unfortunately, under R.C. 5103.15, a permanent surrender cannot be revoked once the juvenile court has consented to it, absent fraud, misrepresentation or undue influence. Although the consequences of the law seem extremely harsh, it is the law and therefore, we must affirm.
 {¶ 28} Accordingly, appellant's sole assignment of error lacks merit. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
Rice, J., concurs, O'Neill, J., dissents with Dissenting Opinion.
[1] Appellant also has another child, Sy'lis Young, born July 7, 2003, however, this appeal only concerns Gaje' Young.
[2] Appellee also obtained ex parte custody of Sy'lis Young, alleging he was dependent.
[3] The juvenile court also found Sy'lis to be dependent.